## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### NO. 5:15-MJ-01720-RJ-1

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| TRELANTE MAURICE BASS, | ) |
| | ) |
| Defendant. | ) |

ORDER ON PROBABLE CAUSE
AND DETENTION

This matter came before the court on July 9, 2015, pursuant to Fed. R. Crim. P. 5.1 to determine whether there is probable cause to support the charges contained in the criminal complaint against Defendant Trelante Maurice Bass ("Defendant") and for a hearing on the Government's motion, pursuant to 18 U.S.C. § 3142(f), to detain Defendant until further proceedings. During the hearing, at which Defendant was represented by counsel, the court made oral findings of probable cause to support the criminal complaint. In addition, having considered the record pursuant to 18 U.S.C. § 3142(d) and based on the findings and reasons stated below and in open court, the court finds there are conditions that may be imposed on Defendant to reasonably assure the court of his appearance and the safety of the community as required. The government's motion is therefore denied.

### BACKGROUND

The Government presented the testimony of John S. Corpening, an agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Defendant was represented by counsel and presented the testimony of a proposed third-party custodian, Tokisha Powell. Defendant is charged with (1) dealing firearms without a license, in violation of 18 U.S.C.

§ 922(a)(1)(A); (2) possessing and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); (3) possession of a stolen firearm, in violation of 18 U.S.C. § 922(j); (4) distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1); (5) distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1); and (6) possession of an unregistered weapon made from a shotgun, in violation of 26 U.S.C. § 5861(d).

Agent Corpening testified that in April 2015, he began a joint investigation with the Goldsboro Police Department ("GPD") after receiving information from a GPD confidential informant ("CI"). The CI provided information that Defendant was selling firearms and cocaine out of Bass Tires in Goldsboro, North Carolina.

On April 20, 2015, Defendant contacted the CI, told the CI that Defendant's father had "the good stuff," and instructed the CI to come to Bass Tires. On April 21, 2015, Agent Corpening met the CI, provided the CI with ATF funds, and directed the CI to purchase firearms and cocaine from Defendant's father, Leetrell Bass. The CI went to Bass Tires, but Leetrell Bass was not there. Instead, the CI spoke with the Defendant in regards to purchasing firearms and cocaine. Defendant showed the CI a Smith & Wesson model 66, .357 revolver and offered to sell the revolver to the CI for $850.00. Then Defendant retrieved $50.00 worth of cocaine from a third party located in a car in the Bass Tires parking lot. The CI purchased the revolver and cocaine from Defendant for $900.00. The transaction was recorded with audio and video equipment. After the transaction, the CI met Agent Corpening and gave Agent Corpening the revolver and cocaine. The cocaine weighed approximately 0.8 grams. The cocaine was also field tested, the results of which were positive for crack cocaine.

On April 24, 2015, Defendant sent photographs via cellular device to the CI of several

2

firearms for sale. Agent Corpening met the CI, provided the CI with ATF funds, and directed the CI to purchase firearms and cocaine from Defendant. Defendant offered to sell the CI a Taurus revolver, but the CI and Defendant could not agree on a price. Defendant also offered to sell the CI cocaine. The CI purchased the cocaine from Defendant for $260.00. The transaction was recorded with audio and video equipment. After the transaction, the CI met with Agent Corpening and gave Agent Corpening the cocaine. The cocaine weighed approximately 2.4 grams. The cocaine was field tested, the results of which were positive for cocaine.

On April 28, 2015, Defendant informed the CI that Defendant had more firearms for sale. Agent Corpening met with the CI, provided the CI with ATF funds, and directed the CI to purchase firearms and cocaine from Defendant. The CI purchased a Smith & Wesson, model 638-3, .38 caliber revolver for $600.00 and 1/4 ounce of cocaine from Defendant for $450.00. This transaction was recorded with audio and video equipment. After the transaction, the CI met with Agent Corpening and gave Agent Corpening the revolver and cocaine. The cocaine weighed 2.7 grams, which was short of the agreed upon amount. The CI called Defendant and inquired about the amount of cocaine purchased. Defendant told the CI that Defendant was shorted by his drug supplier, but that Defendant would fix this issue in the future. The cocaine was field tested for crack cocaine, the results of which were positive.

On May 12, 2015, Defendant contacted the CI via cellular device and informed the CI that Defendant had a revolver for sale. Agent Corpening met with the CI, provided the CI with ATF funds, and directed the CI to purchase firearms from Defendant. The CI called Defendant, and Defendant told the CI to meet him at a Dollar General parking lot on North George Street in Goldsboro, North Carolina. Although Defendant previously offered to sell a revolver, at the

3

transaction, Defendant presented a Taurus Millennium Pro 745, .45 caliber pistol. The CI purchased the pistol for $650.00. The transaction was recorded with audio and video equipment. Later that day, the Defendant called the CI about another firearm, but the CI did not attempt to purchase the additional firearm.

On May 13, 2015, Defendant called the CI and offered to sell the CI a revolver. Agent Corpening met with the CI, supplied the CI with ATF funds, and directed the CI to purchase firearms from Defendant. The CI went to Bass Tires to purchase the firearm, but the Defendant was not present. Thereafter, the CI met the Defendant in the Dollar General parking lot and purchased a Taurus, model Judge .45/.410 revolver for $600.00. The transaction was recorded with audio and video equipment. After the transaction, the CI met with Agent Corpening and gave Agent Corpening the revolver. Agent Corpening queried the revolver in the National Crime Information Center ("NCIC") and determined that the revolver had previously been reported as stolen from WT's Guns in Goldsboro in 2012. Additionally, Agent Corpening examined the revolver and determined the revolver had been shipped or transported in interstate or foreign commerce.

On May 21, 2015, Defendant informed the CI that the Defendant had two firearms for sale. Defendant directed the CI to meet Defendant in the Family Dollar Store parking lot on North George Street in Goldsboro, North Carolina. Agent Corpening met the CI, supplied the CI with ATF funds, and directed the CI to purchase firearms from Defendant. The CI met Defendant in the Family Dollar Store parking lot and purchased two firearms for a total of $1,000.00. One firearm was a Hi-Point model C9 9mm pistol, and the other firearm was a Charter Arms, model Undercover .38 caliber revolver. The transaction was recorded with audio and visual equipment. After the transaction, the CI met Agent Corpening and gave Agent Corpening the firearms. Agent Corpening

4

queried the firearms in NCIC and determined the Hi-Point pistol had previously been reported as stolen.

On May 27, 2015, Defendant contacted the CI and informed the CI that Defendant had three firearms for sale. Agent Corpening met the CI, provided the CI with ATF funds, and directed the CI to purchase firearms from Defendant. The CI and Defendant met in the Family Dollar Store parking lot on North George Street in Goldsboro, North Carolina. The CI purchased three guns from Defendant for $1,300.00. The first firearm was a Bryco Arms, model 38, .380 caliber pistol. The second firearm was a Maverick by Mossberg, model 88, 12 gauge shotgun. The third firearm was a CBC model 715T semi-automatic, .22 caliber rifle. Defendant also gave the CI some ammunition and four shotgun shells. The transaction was recorded with audio and video equipment. After the transaction, the CI met with Agent Corpening and gave Agent Corpening the firearms, ammunition, and shotgun shells. Agent Corpening queried the firearms in NCIC and determined that the Byrco pistol was reported as stolen from a private residence in Wayne County. Additionally, Agent Corpening examined the shotgun and determined the barrel had been cut to seventeen inches, which is in violation of federal law. Agent Corpening queried the shotgun in the National Firearms Registration and Transfer Record and discovered the seventeen inch barrel was not registered, nor did Defendant have any firearms registered to him.

On June 15, 2015, Defendant called the CI and offered to sell the CI four firearms. Agent Corpening met the CI, supplied the CI with ATF funds, and directed the CI to purchase firearms from Defendant. The CI called Defendant to set up a sale, and Defendant instructed the CI to meet Defendant in the Family Dollar Store parking lot. Although Defendant previously offered four firearms, Defendant only sold the CI three firearms because one was "no good." The CI purchased

5

the three firearms, a bag of ammunition, and thirteen bags of marijuana from Defendant for $1,800.00. The first firearm was a Yugoslavian model 59/66, 7.62 x 99 mm semi-automatic rifle. The second firearm was a Smith & Wesson model Bodyguard BG380, .380 caliber pistol. The third firearm was another Smith & Wesson model Bodyguard BG380, .380 caliber pistol. The transaction was recorded with audio and visual equipment. After the transaction, the CI met Agent Corpening and gave Agent Corpening the firearms, ammunition, and marijuana. The marijuana weighed 8 grams and field tested positive for marijuana. Agent Corpening queried the firearms in NCIC, and discovered that the second firearm, a Smith & Wesson pistol, was reported as stolen from a residence in Wayne County in March 2015.

Agent Corpening also requested a search of the ATF Federal Firearms Licensing Center to determine if Defendant held a Firearms License to engage in the business of dealing in firearms. The search revealed that Defendant was not licensed to engage in the business of dealing in firearms.

On July 2, 2015, Defendant was arrested. Defendant was informed of his *Miranda* rights, after which Defendant agreed to speak with agents. Defendant admitted to selling firearms and drugs. Defendant stated that he acted as a "middleman" for the sale of the firearms and drugs. Throughout his arrest and subsequent interrogation, Defendant was cooperative with the agents.

Through the testimony of Agent Corpening, the Government has presented credible evidence sufficient to demonstrate that it is more likely than not that the charged offenses have been committed by Defendant. Accordingly, based on this evidence, and for the other reasons stated in open court, there is probable cause to believe Defendant committed the offenses charged in the criminal complaint.

6

## DISCUSSION

The court conducted a detention hearing in accordance with the Bail Reform Act, 18 U.S.C. § 3142. The court considered the testimony presented by Agent Corpening, Defendant's mother, Tokisha Powell, as a proposed third-party custodian, as well as the report and recommendation of the pre-trial services office, which was provided to the parties in advance of the hearing.

Having considered the record pursuant to 18 U.S.C. § 3142(d) and based on the reasons stated in open court, the court finds there are conditions that may be imposed upon Defendant to reasonably assure his appearance and the safety of the community as required. A separate order for Defendant's pretrial release has been filed. [DE-14].

## CONCLUSION

Accordingly, Defendant is ordered released on conditions after processing.

So ordered, the 10th day of July 2015.

Robert B. Jones, Jr.
United States Magistrate Judge